**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 07-22074-CIV-LENARD/GARBER

**LUZ DIAZ,**

      Plaintiff,

vs.

**TRANSATLANTIC BANK,**

      Defendant.

_____/

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT (D.E. 25)**

**THIS CAUSE** is before the Court on Defendant Transatlantic's Motion for Summary

Judgment ("Motion," D.E. 25), filed on August 20, 2008.  Plaintiff Luz Diaz filed her

Response to Defendant's Motion ("Response," D.E. 30) on September 11, 2008.  Defendant

filed its Reply to Plaintiff's Response (D.E. 35) on September 23, 2008.  Having considered

the Motion, the related papers, and the record, the Court finds as follows:

**I.**       **Background**

Plaintiff began her employment with Transatlantic in November 1999 as a teller.

Transatlantic terminated Plaintiff from her teller position on or about December 11, 2006.

Prior to her termination, Plaintiff requested and received leave pursuant to the Family

and Medical Leave Act ("FMLA") in order to have corrective knee surgery on a torn

meniscus.  Plaintiff's leave period began on September 11, 2006.  Plaintiff was allotted a

twelve-week leave period under the FMLA, and her leave period ended on December 11,

2006.

On September 14, 2006 Plaintiff's doctor performed the knee surgery on Plaintiff. Six days following her surgery, on September 20, 2006, Plaintiff's doctor submitted a report to Transatlantic indicating that Plaintiff would be unable to return to work for three weeks. (See D.E. 25-4 at 10.)  On October 18, 2006, her doctor submitted a report indicating that Plaintiff would be unable to return to work until November 29, 2006, because she needed more physical therapy.  (Id. at 9.)  On November 27, 2006, her doctor submitted a report to Transatlantic indicating that Plaintiff was unable to return to work but did not provide an estimated return date.  (Id. at 4.)

On December 4, 2006, Plaintiff submitted a long-term disability benefits claim.  (See D.E. 33-2.)  As part of her long-term disability claim, Plaintiff submitted a physician's statement form.  Therein, in a section of the form titled "Information about the patient's inability to work,"  Plaintiff's doctor noted that Plaintiff should return to her prior level of functioning within six-to-eight weeks.  (Id. at 3.)  Her doctor also noted that Plaintiff should not kneel or squat and that Plaintiff should avoid prolonged standing or walking.  (Id.)  Additionally, Plaintiff's doctor noted that, in the course of an eight hour workday, Plaintiff could sit for six hours, stand for four hours, and walk for two hours.  (Id.)

As a condition of restoration of an employee's position after a period of FMLA leave, Transatlantic requires that employees submit a physician's certificate stating that the employee is able to resume work.  On December 5, 2006, Transatlantic sent Plaintiff a letter

informing her that, in order to return to work following her FMLA leave, she would need to provide a physician's certificate stating that she was able to resume work.  (D.E. 25-4 at 2.)

In her First Amended Complaint, Plaintiff makes four claims against Transatlantic: failure to accommodate Plaintiff's disability in violation of the Americans with Disability Act of 1990 ("ADA") (Count I); unlawful retaliation in violation of the ADA (Count II); failure to restore to an equivalent position in violation of the FMLA (Count III); unlawful retaliation in violation of the FMLA (Count IV).  (D.E. 1 at 5-7.)

## II.    Standard of Review

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).  Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine

whether there is a genuine issue for trial." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986).  A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Anderson</u>, 477 U.S. at 248; <u>see also</u> <u>Barfield v. Brierton</u>, 883 F.2d 923, 933 (11th Cir. 1989).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions of file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex</u>, 477 U.S. at 323.  Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party.  The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" <u>Id.</u> at 324; <u>see also</u> <u>Fed.R.Civ.P.</u> 56(e).  In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio corp.</u>, 475 U.S. 574, 586 (1986).  That party must demonstrate that there is a "genuine issue for trial." <u>Id.</u> at 587.  An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." <u>Id.</u>

### III.    Discussion

#### A.    Plaintiff's FMLA Claims (Counts III and IV)

The FMLA creates a private right of action to seek equitable relief and money damages against employers who "interfere with, restrain, or deny the exercise of or the attempt to exercise" FMLA rights. 29 U.S.C. §§ 2615(a)(1), 2617(a).  The FMLA gives eligible employees the right to take as much as twelve work weeks of unpaid leave during any twelve-month period for "'a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" <u>Hurlbert v. St. Mary's Health Care Sys., Inc.</u>, 439 F.3d 1286, 1293 (11th Cir. 2006) (brackets added) (<u>quoting</u> 29 U.S.C. § 2612(a)(1)(D)).  Upon return from FMLA leave, an employee is entitled to be restored to the same position held prior to the beginning of the leave, or its equivalent, in terms of benefits, pay and other terms and conditions. 29 U.S.C. § 2614(a)(1).  However, "[a]s a condition of restoration under [§ 2614(a)(1)] for an employee who has taken leave under section [§ 2612(a)(1)(D)], the employer may have a uniformly applied practice or policy that requires each such employee to receive certification from the health care provider of the employee that the employee is able to resume work." 29 U.S.C. 2614(a)(4).

Transatlantic correctly points out that Plaintiff never submitted a physician's certificate that she was able to return to work.  Plaintiff contends that her long-term disability benefits claim contained a form from her physician, dated December 9, 2006, from which Transatlantic should have determined that Plaintiff was able to return to work. (<u>See</u> D.E. 33-

2.)  The Court disagrees.  First, the physician's statement form was part of an application for long-term disability benefits arising from Plaintiff's knee surgery.  It seems somewhat incongruous that Transatlantic should have determined that Plaintiff was able to return to work from a physician's statement contained in an application for benefits based on Plaintiff's inability to return to work.  Second, the physician's statement does not certify that Plaintiff is able to resume work.  Instead, in a section of the form titled "Information about the patient's inability to work," Plaintiff's doctor indicated therein that Plaintiff should return to her prior level of functioning within six-to-eight weeks.  (Id. at 3.)  Plaintiff's doctor also noted on the form that Plaintiff should not kneel or squat and that Plaintiff should avoid prolonged standing or walking.  (Id.)  Nowhere on the physician's statement did Plaintiff's doctor certify that Plaintiff was able to return to work as a teller or in an equivalent position. All the other certifications from Plaintiff's doctor, including the one dated November 27, 2006, stated that Plaintiff was unable to return to work.  (See D.E. 25-4 at 4.)  As Plaintiff is unable to proffer evidence demonstrating that her physician cleared her to return to work upon the expiration of her FMLA leave, she has failed to satisfy a lawful precondition for restoration.  Accordingly, her claim in Count III, failure to restore to an equivalent position in violation of the FMLA, fails.

For similar reasons, her claim in Count IV, unlawful retaliation in violation of FMLA, also fails.  When evaluating a claim of retaliation under the FMLA, in the absence of direct evidence of discrimination on the part of the employer, the Court applies the burden-shifting

framework established by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), for evaluating Title VII retaliatory discharge claims. <u>See</u> <u>Graham v. State Farm Mut. Ins. Co.</u>, 193 F.3d 1274, 1283 (11th Cir. 1999).[1]  In order to establish a prima facie case of retaliatory discharge, discrimination, or retaliation using the <u>McDonnell Douglas</u> framework, a plaintiff must show that (1) she engaged in statutorily protected conduct; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected conduct and the adverse employment action. <u>See</u> <u>Brungart v. BellSouth Telecomms., Inc.</u>, 231 F.3d 791, 798 (11th Cir. 2000).

Under the <u>McDonnell Douglas</u> framework, the effect of the presumption of discrimination created by establishment of the prima facie case is to shift to the employer the burden of producing legitimate, nondiscriminatory reasons for the challenged employment action.  <u>See</u> <u>Hurlbert v. St. Mary's Health Care Sys., Inc.</u>, 439 F.3d 1286, 1297 (11th Cir. 2006); <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1527-28 (11th Cir.1997).  Once a

---

[1]    Plaintiff has failed to proffer any direct evidence of discrimination.  Direct evidence is "evidence, which if believed, proves the existence of the fact or issue without inference or presumption." <u>Jones v. Bessemer Carraway Medical Center</u>, 151 F.3d 1321, 1323 n.11 (11th Cir. 1998).  The Eleventh Circuit has defined direct evidence in the employment discrimination context as "evidence which reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee... [o]nly the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination.  If the alleged statement suggests, but does not prove, a discriminatory motive, then it is considered circumstantial evidence." <u>Richardson v. Dougherty County, GA</u>, 2006 WL 1526065, at *3 (11th Cir. June 5, 2006) (citations omitted).  "An example of direct evidence would be a management memorandum saying, 'Fire Earley -- he is too old.'" <u>Damon v. Fleming Supermarkets, Inc.</u>, 196 F.3d 1354, 1359 (11th Cir. 1999) (internal quotations and citations omitted).  There is no such evidence on the record in this case.

defendant employer has proffered legitimate non-discriminatory reasons for its challenged action, in order to survive summary judgment, Plaintiff must show that the Defendant employer's proffered reasons were pretextual; that is, if she can show that a genuine issue of fact exists as to the truth of the employer's proffered reasons for its challenged action, and thus permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct, then her claim may proceed.  Combs, 106 F.3d at 1529, 1538.  "This evidence must reveal such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 771 (11th Cir. 2005) (quotation marks omitted). Further, "[a] reason is not pretext for discrimination 'unless it is shown both that the reason was false, and that discrimination was the real reason.'" Brooks v. County Com'n of Jefferson County, Ala., 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993)) (emphasis supplied).

Assuming that Plaintiff has made a prima facie showing of retaliatory discharge, Transatlantic has shifted the burden back to Plaintiff through its proffered legitimate non-discriminatory reason for terminating Plaintiff's employment. - her failure to submit a physician's certificate demonstrating that she was able to return to work.  The record evidence shows that on November 27, 2007, Plaintiff submitted a certificate from her employer stating that she was unable to return to work.  On December 4, 2006, Plaintiff filed a long-term

disability claim; therein, Plaintiff's physician stated that Plaintiff would require an additional 6-8 weeks to return to her prior level of functioning.  On December 5, 2006, Transatlantic's Human Resources Director sent Plaintiff a letter explaining that, in order to return to work, she would need to submit a physician's certificate stating that she was able to resume work. Plaintiff never submitted such a certificate, and, upon expiration of her FMLA leave, her employment was terminated.

Plaintiff must now demonstrate that this reason was pretextual.  In order to demonstrate pretext, Plaintiff must show both that the reason was false, and that discrimination was the real reason.  See Brooks, 446 F.3d at 1163.  Plaintiff testified at her deposition that when she spoke to Transatlantic's Human Resources Director, Blanca Brugueras, regarding the physician's certificate, "she said that I could not go back unless I was going back to the same position and not to any other position, that if the doctor provided a letter it had to be without any restrictions and for the same position because that is the only thing she had for me." (D.E. 25-3 at 5.)  Plaintiff appears to contend that Transatlantic's proffered reason was pretextual because Transatlantic was lying when it claimed through its Human Resources Director that no other positions besides teller were available.

Plaintiff's has not established pretext because she has failed to demonstrate that Transatlantic's proffered reason for terminating her employment was false.  "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it."  Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir.

2000).   Plaintiff does not meet Transatlantic's proffered reason head on and rebut it.   That is, Plaintiff does not dispute that she was terminated because she failed to submit a medical certificate authorizing her to return to work.   What she argues is that, had Transatlantic revealed to her the existence of other jobs that she could perform in her restricted state, like a receptionist position, she would have submitted a  medical certificate from her physician permitting her to return to work in that capacity.   However, this argument does not show that Transatlantic's reason for terminating her employment was false; it only suggests that she might have complied with Transatlantic's requirement for a medical certificate had she been informed of the existence of the existence of other job openings.[2]   See Reeves v. Sanderson

---

[2]        It is also worth noting that the record evidence overwhelmingly suggests that there were no comparable positions open during the period of Plaintiff's FMLA leave.   Plaintiff contends that, during the time that she was on FMLA leave, a receptionist position became available.   In support of this contention, Plaintiff points to her deposition testimony that she learned that the position was open at the end of November 2006. (D.E. 25-5 at 9.)  Further, she attaches to her Response an affidavit from Concepcion Ramis, another employee from Transatlantic; therein, the affiant states: "I am very certain that the [receptionist] position was available before Luz was terminated." (Id.)  However, the contemporaneous evidence on the record strongly suggest that Plaintiff's after-the-fact deposition testimony and her coworker's affidavit are incorrect.   On January 5, 2007, nearly a month after Plaintiff was terminated, Transatlantic's Human Resources Director sent an email to the Miami Herald newspaper seeking to place an advertisement for the receptionist position. (D.E. 33-8 at 2.)  On January 8, 2007, the outgoing receptionist submitted her letter of resignation to Transatlantic and gave notice of her last day, February 2, 2007. (D.E. 33-9.)  Thus, the receptionist position was not open until nearly two months after Plaintiff's FMLA leave expired and she was terminated.   Plaintiff also testified at her deposition that there was a customer service position that was open while she was on FMLA leave for which Transatlantic refused to consider her. (D.E. 25-5 at 8-9.)  The record evidence indicates, however, that the only customer service position that was open during Plaintiff's period of FMLA leave was filled on October 16, 2006. (D.E. 33-6 at 6.)  On October 18, 2006, Plaintiff submitted a doctor's note stating that she would be unable to return to work until November 29, 2008 because she needed further physical therapy. (D.E. 25-4 at 9.)  Additionally, Plaintiff testified at her deposition that the person hired to fill the customer service position was fired while she was on leave and then the position was "frozen" and the position

Plumbing Prods., 530 U.S. 133, 148 (2000) (summary judgement for the employer is appropriate "if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.").

Additionally, even if Plaintiff could demonstrate that Transatlantic's proffered reason for terminating her employment was false, Plaintiff has failed to point to any evidence from which a rational trier of fact could find that the real reason for terminating her employment was discrimination or retaliation motivated by her FMLA leave.[3] See Brooks 446 F.3d at 1163 (to demonstrate pretext a plaintiff must show that the proffered reason was false and the real reason was discriminatory retaliation for Plaintiff's exercise of her statutory rights). There is also no evidence on the record that Transatlantic's alleged failure to consider Plaintiff for other positions was in retaliation for the exercise of her FMLA rights.

The evidence does show that, immediately prior to her termination, Transatlantic

---

was not reopened.

[3]      In her Response, Plaintiff attempts to show discriminatory animus by making the unsupported allegation that Transatlantic's Human Resources Director could have expedited Plaintiff's MRI immediately prior to her termination. First of all, there is no evidence in the record to support this allegation. Second of all, even if Transatlantic had the ability to contact Plaintiff's medical provider to expedite the MRI, it is unclear how the failure to do so evidences discriminatory motive in terminating Plaintiff's employment.

Plaintiff also points to Transatlantic's alleged failure to consider her for other positions besides teller as evidence of discriminatory animus. However, Plaintiff does not provide any evidence from which a rational trier of fact could find that the reason Transatlantic allegedly failed to consider Plaintiff for other positions was because Plaintiff exercised her FMLA rights. Plaintiff's allegation of a connection between these two events is completely conclusory.

informed Plaintiff that her teller position remained open for her and that she could return if she submitted a certificate from her doctor clearing her to return to work. (See D.E. 25-4 at 2.)  As such, the evidence demonstrates that, rather than discriminating against Plaintiff, Transatlantic was fully complying with its statutory duty to hold Plaintiff's position open during the course of her FMLA leave, upon the lawful condition that she receive medical clearance to return to work.

Accordingly, Transatlantic's Motion as to Counts III and IV is **GRANTED**.

B.    Plaintiff's ADA Claims (Counts III and IV)

The Americans with Disabilities Act of 1990, as amended in the Civil Rights Amendments Act of 1991, 42 U.S.C. § 12101 et seq., prohibits covered employers from discriminating based upon the known physical or mental impairments of a qualified individual with a disability. 42 U.S.C. § 12112.  "Indeed the ADA imposes upon employers the duty to provide reasonable accommodations for known disabilities unless doing so would result in undue hardship upon the employer." Morisky v. Broward County, 80 F.3d 445, 447 (11th Cir.1996) (citation omitted) (emphasis supplied).

Once a plaintiff has shown that he is an otherwise qualified disabled individual within the meaning of the ADA and that a defendant has not provided a reasonable accommodation, a defendant must provide a reasonable accommodation unless he can assert an undue hardship as an affirmative defense.  Nadler v. Harvey,  2007 WL 2404705, *9 (11th Cir. 2007).[4]

_____

[4]    In Nadler v. Harvey,  2007 WL 2404705, *9 (11th Cir. 2007), the Eleventh Circuit joined the majority of federal circuit courts of appeal and held that the McDonnell Douglas

Plaintiff's claim for failure to provide a reasonable accommodation fails because Plaintiff cannot show that, at the time Transatlantic terminated her employment, she was disable as is defined in the ADA.  Under the ADA,

> The term "disability" means, with respect to an individual --
> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).

The court generally determines the existence of a disability, under the first definition, by making an assessment of whether: (1) a plaintiff's injury is a physical impairment; (2) the activities that the plaintiff claims are limited by her injury qualify as major life activities under the ADA; and (3) the injury substantially limits the major life activities she identifies.  See Bragdon v. Abbott, 524 U.S. 624, 631 (1998). "In determining whether an individual is substantially limited in a major life activity, . . . the following factors should be considered: the nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment." Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 196 (2002) (internal quotations and citations omitted).  A sporadic or temporary impairment will not constitute a disability.  See Kay v. Lester Coggins Trucking, Inc., 141

---

burden shifting analysis is inappropriate in reasonable accommodation cases.  Instead, the Eleventh Circuit instructed district courts to follow the framework set forth above.  Id.  However, under either framework, Plaintiff's claim fails as the record evidence demonstrates that she was not disabled as defined in the ADA.

Fed. Appx. 824, 827 (11th Cir. 2005); see also Sutton v. Lader, 185 F.3d 1203, 1209 (11th

Cir. 1999) (holding that a temporary condition does not constitute a "disability" and listing

authorities); Johnston v. Henderson, 144 F. Supp. 2d 1341, 1352 (S.D. Fla. 2001) ("The law

is well settled that temporary, nonchronic impairments of short duration, with little or no long-

term or permanent impact, are not disabilities as defined by the Act.").

The record conclusively demonstrates that, at the time Transatlantic allegedly failed

to provide a reasonable accommodation, she was not disabled under the first definition

provided in 42 U.S.C. § 12102(2)(A). As detailed at length above, on December 4, 2006,

Plaintiff submitted a long-term disability benefits claim containing a physician's statement

form which stated that Plaintiff would be back to her prior level of functioning within 6-8

weeks. Previously, Plaintiff had submitted certificates from her doctor on September 20,

2006, stating that she could return to work in three weeks and October 18, 2006, stating that

she could return to work on November 29, 2006. (D.E. 25-4 at 9-10.) Plaintiff has presented

no evidence of a long-term or permanent physical or mental impairment that substantially

limited one or more of her major life activities at the time Transatlantic allegedly failed to

provide a reasonable accommodation.[5]

---

[5]     In support of her argument that she is disabled, Plaintiff proffers a "Final
Evaluation" from a physician, dated June 12, 2008. (See D.E. 33-7 at 2.) Therein, the physician
states that, following an initial evaluation on May 29, 2008, he had determined that Plaintiff is
19% disabled in her right knee and, correspondingly, 8% disabled in her person. (Id.) Even if
this "Final Evaluation" establishes that Plaintiff's knee impairment is permanent or long term,
Plaintiff does not contend that Transatlantic knew of this medical determination at the time that
Plaintiff's employment was terminated. As a matter of law, a defendant employer cannot be
liable for failing to provide a reasonable accommodation unless the defendant employer had

The record evidence also demonstrates that Plaintiff did not have a record of impairment pursuant to the second definition of "disabled" indicated above. A record of impairment means that the plaintiff "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k). "This part of the definition is satisfied if a record relied on by an employer indicates that the individual has or has had a substantially limiting impairment." Id. As stated previously, the record shows that throughout the term of Plaintiff's FMLA leave, she consistently provided Transatlantic with doctor's notes and certifications indicating that she would be able to return to work within weeks, culminating with her long term benefits claim containing a statement from her physician that she would be back to her prior level of functioning within six to eight weeks. As such, Plaintiff has failed to provide a single piece of evidence demonstrating a record of a disability.

Finally, there is no record evidence that, under the ADA's third definition of "disabled," she was regarded as having a disability. A person is "regarded by" her employer as disabled, when she "(1) has an impairment that does not substantially limit a major life activity, but is treated by an employer as though it does; (2) has an impairment that limits a major life activity only because of others' attitudes towards the impairment; or (3) has no

---

actual or constructive knowledge of the disability.  See Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1226 (11th Cir. 1999); see also Nadler v. Harvey, 2007 WL 2404705, *8 (11th Cir. 2007) ("An employer must reasonably accommodate an otherwise qualified employee with a known disability unless the accommodation would impose an undue hardship in the operation of the business.") (emphasis supplied).

impairment whatsoever, but is treated by an employer as having a disability as recognized by the ADA." Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1327 n. 2 (11th Cir.1998)(citing 29 C.F.R. § 1630.2(l)).  The record evidence demonstrates that Transatlantic consistently offered to return her to her previous position of employment if she provided a doctor's certification that she was able to return to work.   This evidence strongly tends to show that she was not treated as if she had a disability.  While Plaintiff testified at her deposition that her use of crutches prior to her surgery subjected her to ridicule from her co-workers, she also testified that none of her co-workers actually believed she was injured.  (D.E. 25-5 at 10.) This evidence does not demonstrate that she was treated as if she had a disability or suffered an impairment limiting a major life activity because of the attitude of her co-workers.

As there is no genuine issue of material fact regarding the non-existence of Plaintiff's disability, Plaintiff's claim for failure to provide reasonable accommodation fails and Defendant's Motion as to Claim I is **GRANTED**.

Like her FMLA retaliation claim, the McDonnel Douglas burden-shifting framework applies to Plaintiff's ADA retaliation claim.  See Shotz v. City of Plantation, 344 F.3d 1161, 1180 (11th Cir. 2003).  For the same reasons that Plaintiff's FMLA retaliation claims fails - there is no genuine issue of material fact that Transatlantic's legitimate, non-discriminatory reason for terminating Plaintiff's employment was pretextual - her ADA retaliation claim fails.  Accordingly, Defendant's Motion as to Claim II is **GRANTED**.

Accordingly, it is hereby:

**ORDERED AND ADJUDGED** that

1.      Defendant's Motion for Summary Judgment (D.E. 25) is **GRANTED**.

2.      **THIS CASE IS CLOSED**.

3.      **ALL PENDING MOTIONS ARE DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 10th day of November, 2008.

**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**

17