# United States Court of Appeals
Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

**John Ley**
Clerk of the Court

For rules and forms visit
www.ca11.uscourts.gov

March 25, 2010

Steven M. Larimore
Clerk, U.S. District Court
400 N MIAMI AVE RM 8N09
MIAMI  FL  33128-1813



**Appeal Number: 09-13150-EE**
Case Style: Luz Diaz v. TransAtlantic Bank
District Court Number: 07-22074 CV-JAL

The enclosed certified copy of the judgment and a copy of this court's opinion are hereby issued as the mandate of this court.

Also enclosed are the following:
    Original record on appeal or review, consisting of: one volume

The clerk of the court or agency shown above is requested to acknowledge receipt on the copy of this letter enclosed to the clerk.

A copy of this letter, and the judgment form if noted above, <u>but not a copy of the court's decision</u>, is also being mailed to counsel and pro se parties. A copy of the court's decision was previously mailed to counsel and pro se parties on the date it was issued.

Sincerely,

John Ley, Clerk of Court

Reply To: James O. Delaney (404) 335-6113

Encl.

MDT-1 (06/2006)

# United States Court of Appeals
For the Eleventh Circuit

No. 09-13150

District Court Docket No.
07-22074-CV-JAL

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

Feb 24, 2010

JOHN LEY
CLERK

LUZ DIAZ,

    Plaintiff-Appellant,

versus

TRANSATLANTIC BANK,

    Defendant-Appellee.

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia

---

Appeal from the United States District Court
for the Southern District of Florida

---

## JUDGMENT

It is hereby ordered, adjudged, and decreed that the attached opinion included herein by reference, is entered as the judgment of this Court.

ISSUED AS MANDATE
MAR 2 5 2010
U.S. COURT OF APPEALS
ATLANTA GA

Entered:   February 24, 2010
For the Court:   John Ley, Clerk
By:   Clark, Djuanna

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 09-13150
Non-Argument Calendar

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 24, 2010
JOHN LEY
CLERK

D. C. Docket No. 07-22074-CV-JAL

LUZ DIAZ,

Plaintiff-Appellant,

versus

TRANSATLANTIC BANK,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Florida

(February 24, 2010)

Before TJOFLAT, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

Luz Diaz appeals the district court's grant of summary judgment in favor of

her former employer, Transatlantic Bank. Diaz filed suit against Transatlantic for: (1) interference and retaliation under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2615 and 2617; and (2) discrimination and retaliation claims under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12112(a) and 12203(a). The district court granted summary judgment on all claims. Diaz also appeals the district court's denial of her motion to alter or amend the judgment. Viewing all facts and inferences in favor of Diaz, we find that the district court properly granted Transatlantic's motion for summary judgment. Further, we find that the district court did not abuse its discretion in denying Diaz's motion to alter or amend the judgment.

## I.

Diaz was employed by Transatlantic as a bank teller for several years. Diaz took FMLA leave on September 11, 2006, due to a severe knee injury. Transatlantic requested documentation and medical updates concerning Diaz's condition during the period of FMLA leave, and Diaz complied. Her injury prevented her from climbing into the high chairs used by bank tellers. Diaz informed Transatlantic that she was willing to work at any other position that did not require her to climb into one of the high chairs.

Diaz's FMLA leave expired on December 11, 2006. Transatlantic's policy

2

required medical clearance prior to any employee returning to work from FMLA leave. Diaz submitted a long-term disabilities claim on December 4, 2006. In support of this claim, Diaz attached a statement form from her physician. The physician stated that Diaz could return to work in six to eight weeks and went on to describe the limitations created by her injury. Diaz's doctors would not clear her to work until she received an MRI that was scheduled for January 3, 2007. Thus, Diaz did not provide medical clearance and did not return to work on December 11, 2006. This resulted in Diaz's dismissal from Transatlantic.

The district court granted Transatlantic's motion for summary judgment finding that Diaz failed to demonstrate that her physician cleared her to return to work, and thus Transatlantic was not liable for dismissing her. The district court also found that Diaz's retaliation claim failed because her failure to provide medical clearance to return to work was a legitimate non-discriminatory reason for dismissing her. In addressing Diaz's ADA claims, the district court found that she was not disabled at the time of the alleged discriminatory action by Transatlantic. Finally, the district court denied Diaz's motion to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59(e).

## II.

*A.    The District Court Properly Granted Summary Judgment to Transatlantic*

We review a district court's grant of summary judgment *de novo*, viewing the record and drawing all inferences in favor of the non-moving party. *Martin v. Brevard County Pub. Sch.*, 543 F.3d 1261, 1265 (11th Cir. 2008). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). "A party moving for summary judgment has the burden of showing that there is no genuine issue of fact." *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir. 1990) (quotation omitted). "A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* (quotation omitted). "All evidence and reasonable factual inferences therefrom must be viewed against the party seeking summary judgment." *Id.*

1.   *Transatlantic Did Not Interfere with Diaz's FMLA Rights*

An employer commits FMLA interference by denying a benefit that an employee is entitled to under the FMLA. *Martin*, 543 F.3d at 1266–67. An employee who takes FMLA leave is entitled "'to be restored by the employer to the position of employment held by the employee when the leave commenced' or to an equivalent position." *Id.* at 1267 (quoting 29 U.S.C. § 2614(a)(1)(A)). "An

4

employee has no greater right to . . . benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period." 29 C.F.R. § 825.216(a).

> If the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition . . . the employee has no right to restoration to another position under the FMLA. The employer's obligations may, however, be governed by the Americans with Disabilities Act (ADA), as amended.

29 C.F.R. § 825.216(c). "As a condition of restoration . . ., the employer may have a uniformly applied practice or policy that requires each such employee to receive certification from the health care provider of the employee that the employee is able to resume work." 29 U.S.C. § 2614(a)(4).

In support of her FMLA interference claim, Diaz argues that the district court made improper inferences from the evidence and did not consider the medical evidence as a whole. Diaz asserts that the statements of her physician in the December 4, 2006 disability application medically cleared her to resume work. Diaz emphasizes that the physician's statement detailed the tasks that Diaz could complete, which included every task of the teller position other than sitting on the high chair. Diaz asserts that the district court improperly determined facts by refusing to consider this statement. Additionally, Diaz argues that Transatlantic

5

interfered with Diaz's return to work by changing medical insurance and refusing to help Diaz navigate the insurance coverage to obtain a timely MRI.

There is no evidence that Diaz ever provided Transatlantic with medical clearance from a doctor that would allow her to return to work. The December 4, 2006 disability form cannot be construed as medical clearance for the simple reason that the form itself stated that Diaz would not be able to return to work for six to eight weeks. This is the very opposite of medical clearance. Further, we agree with the district court that it is unreasonable to ask Transatlantic to determine that Diaz was able to return to work on the basis of a statement contained in an application for disability benefits.

As for Diaz's claim that Transatlantic refused to help her schedule an MRI, we find no merit. Diaz was, or should have been, aware of the amount of time she was afforded under FMLA. Transatlantic was not required to help Diaz schedule medical appointments or manage her insurance coverage. Furthermore, Transatlantic was not required to extend FMLA leave by nearly a month for Diaz to obtain an MRI.

Transatlantic did not interfere with Diaz's FMLA rights because Transatlantic was permitted to require medical clearance for Diaz to return to work. Further, Transatlantic did not treat Diaz differently than other employees when it

changed its health insurance provider.

2.  *Diaz's Allegations Did Not Establish a Claim for Retaliation*

In support of her FMLA retaliation claim, Diaz argues that the district court erroneously failed to consider adverse actions taken by Transatlantic before it fired her. Diaz claims Transatlantic: (1) refused to consider her for other positions; (2) unreasonably requested medical evidence; and (3) refused to provide medical benefits during the change in health insurance providers.

"To establish a *prima facie* case of retaliation, a plaintiff must show that he engaged in statutorily protected conduct, he suffered adverse action, and there is a causal connection between the protected conduct and the adverse action." *Smith v. BellSouth Telecomms., Inc.*, 273 F.3d 1303, 1314 (11th Cir. 2001) (citation omitted). "If the alleged statement suggests, but does not prove, a discriminatory motive, then it is considered circumstantial evidence." *Akouri v. Fla. Dept. of Transp.*, 408 F.3d 1338, 1347 (11th Cir. 2005).

If the plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for the challenged action. *See EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272 (11th Cir. 2002). Where the employer meets its burden, "the plaintiff must introduce significantly probative evidence showing that the asserted reason is

merely a pretext for discrimination" to avoid summary judgment. *Brooks v. County Comm'n of Jefferson County*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quotation omitted). A plaintiff may show pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S. Ct. 1089, 1095 (1981). A plaintiff may point to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's proffered reason. *Brooks*, 446 F.3d at 1163 (citation omitted). However, a plaintiff cannot merely quarrel with the wisdom of the employer's reason, but "must meet the reason head on and rebut it." *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc).

Even assuming Diaz established a prima facie case of FMLA retaliation, she did not raise a genuine issue of material fact to show that Transatlantic's legitimate non-discriminatory reason for dismissing her was a pretext. Diaz did not provide Transatlantic with medical clearance. Transatlantic dismissed her because she was unable to return to work at the end of her FMLA leave without medical clearance.

Diaz has not provided any evidence or any reasonable argument as to why we should view this reason for dismissal as pretext. Despite the fact that

8

Transatlantic did not have an obligation to place Diaz in a different position, the evidence shows that there were not any other positions available at Transatlantic at the end of her FMLA leave. Transatlantic's requests for updates of Diaz's medical status were not unreasonable, and Diaz has provided no basis for us to conclude that these requests were pretext for discrimination. Finally, Transatlantic's change of the employees' medical insurance was a uniform switch for all employees. Diaz has not shown any reason for us to conclude that any of these actions by Transatlantic were a pretext for discrimination.

### 3.   *Diaz's Allegations Did Not Present a Claim Under the ADA*

Turning to her ADA claims, Diaz argues that the medical evidence, taken as a whole, shows that she was disabled. Diaz maintains that the district court erred by finding that her condition was temporary because the most recent medical evidence showed that her condition is permanent and long term. Acknowledging that the new medical evidence cannot stand alone to show her disability because it was not available when Transatlantic fired her, Diaz argues that the new medical evidence corroborates the evidence provided to Transatlantic and shows that she suffered a disability. Additionally, Diaz maintains that her supervisor's attitude towards her showed that Transatlantic regarded her as disabled. Diaz argues that the same conduct that showed retaliation for her FMLA claims showed that her

9

dismissal was in retaliation for her request for reasonable accommodation under the ADA.

The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge . . . under [the ADA]." 42 U.S.C. § 12203(a).

> This provision creates a prohibition on retaliation under the ADA that is similar to Title VII's prohibition on retaliation. Accordingly, we assess ADA retaliation claims under the same framework [employed] for retaliation claims arising under Title VII. To establish a *prima facie* case of retaliation, a plaintiff must show: (1) statutorily protected expression; (2) adverse employment action; and (3) a causal link between the protected expression and the adverse action.

*Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997) (citations omitted).

The ADA prohibits discrimination against a disabled individual in regard to employment matters. 42 U.S.C. § 12112(a). In order to prove a *prima facie* case of employment discrimination under the ADA, the plaintiff must show that: "(1) she has a disability; (2) she is a qualified individual; and (3) she was subjected to unlawful discrimination because of her disability." *Morisky v. Broward County*, 80 F.3d 445, 447 (11th Cir. 1996). "A severe limitation that is short term and temporary is not evidence of a disability." *Garret v. Univ. of Ala. at Birmingham*

10

*Bd. of Trs.*, 507 F.3d 1306, 1315 (11th Cir. 2007) (interpreting the definition of disability under the Rehabilitation Act); *see Allmond v. Akal Sec., Inc.*, 558 F.3d 1312, 1316 n.3 (11th Cir. 2009) (holding that the Rehabilitation Act and the ADA apply the "same standards" and may be used "interchangeably"). An individual qualifies as disabled if she is "regarded as having [a disabling] impairment." 42 U.S.C. § 12102(3)(A).

A qualified individual is unlawfully discriminated against if the employer does not reasonably accommodate the disability. 42 U.S.C. § 12112(b)(5)(A); *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1225–26 (11th Cir. 2005). Reasonable accommodations may include "reassignment to a vacant position, acquisition or modification of equipment or devices, . . . and other similar accommodations." 42 U.S.C. § 12111(9)(B). An employer is not required to reasonably accommodate an employee by creating a new position. *Terrell v. USAir*, 132 F.3d 621, 626–27 (11th Cir. 1998).

Diaz has not shown that she was disabled when she was dismissed by Transatlantic, thus the district court properly granted Transatlantic summary judgment on her ADA claim. *See* 42 U.S.C. § 12102(1) (a person is considered disabled under the ADA if: (1) a major life activity is substantially limited by the impairment; (2) there is a record of impairment; or (3) the person is regarded by

11

the employer as having an impairment). Diaz cannot maintain a claim of ADA discrimination if she was not disabled at the time of the alleged discriminatory act. She did not show that one or more of her major life activities has been limited. She did not have a record of impairment, and there is no evidence to support that Diaz was at any time treated by Transatlantic as having an impairment. Moreover, even assuming Diaz established a *prima facie* case of ADA retaliation, she did not raise a genuine issue of material fact to show that Transatlantic's legitimate, non-discriminatory reason for firing her was a pretext.

B.   *The District Court Did Not Abuse Its Discretion in Denying Diaz's Motion to Amend Judgment*

Diaz argues that the district court erroneously denied her Rule 59(e) motion because she cited facts that were misinterpreted and overlooked by the court. We review a district court's denial of a motion to amend judgment for abuse of discretion. *Case v. Eslinger*, 555 F.3d 1317, 1325 (11th Cir. 2009).

The district court did not abuse its discretion by denying Diaz's motion to alter or amend the judgment because the district court correctly resolved Transatlantic's summary judgment motion. Accordingly, we affirm the district court's grant of summary judgment to Transatlantic.

**AFFIRMED.**

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit
By: _____
Deputy Clerk
Atlanta, Georgia